1

2

3

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

**Jul 17, 2018**

5     UNITED STATES DISTRICT COURT     SEAN F. McAVOY, CLERK

6          EASTERN DISTRICT OF WASHINGTON

7    JOHN T.,                          No. 1:16-cv-03220-FVS

8              Plaintiff,              REPORT AND
                                       RECOMMENDATION TO GRANT
9         vs.                          PLAINTIFF'S MOTION FOR
                                       SUMMARY JUDGMENT AND TO
10   COMMISSIONER OF SOCIAL            DENY DEFENDANT'S MOTION
                                       FOR SUMMARY JUDGMENT
11   SECURITY,
                                       ECF Nos. 14, 15
12             Defendant.

13        BEFORE THE COURT are the parties' cross-motions for summary

14   judgment.  ECF Nos. 14, 15.  This matter has been referred to the undersigned

15   magistrate judge for issuance of a report and recommendation.  ECF No. 17.  The

16   Court, having reviewed the administrative record and the parties' briefing, is fully

17   informed.  For the reasons discussed below, IT IS RECOMMENDED Plaintiff's

18   Motion, ECF No. 14, be granted and Defendant's Motion, ECF No. 15, be denied.

19

20

REPORT AND RECOMMENDATION - 1

1

**JURISDICTION**

2    The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

3

**STANDARD OF REVIEW**

4    A district court's review of a final decision of the Commissioner of Social

5  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

6  limited; the Commissioner's decision will be disturbed "only if it is not supported

7  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

8  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

9  reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

10  (quotation and citation omitted).  Stated differently, substantial evidence equates to

11  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

12  citation omitted).  In determining whether the standard has been satisfied, a

13  reviewing court must consider the entire record as a whole rather than searching

14  for supporting evidence in isolation.  *Id.*

15    In reviewing a denial of benefits, a district court may not substitute its

16  judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

17  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

18  rational interpretation, [the court] must uphold the ALJ's findings if they are

19  supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674

20  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

REPORT AND RECOMMENDATION - 2

1   ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

2   "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3   *Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4   decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

5   *Sanders*, 556 U.S. 396, 409-10 (2009).

6                    **FIVE-STEP EVALUATION PROCESS**

7           A claimant must satisfy two conditions to be considered "disabled" within

8   the meaning of the Social Security Act.  First, the claimant must be "unable to

9   engage in any substantial gainful activity by reason of any medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of not less than twelve

12  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

13  "of such severity that he is not only unable to do his previous work[,] but cannot,

14  considering his age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy."  42 U.S.C. §

16  1382c(a)(3)(B).

17          The Commissioner has established a five-step sequential analysis to

18  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

20  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

REPORT AND RECOMMENDATION - 3

1 gainful activity," the Commissioner must find that the claimant is not disabled.  20

2 C.F.R. § 416.920(b).

3      If the claimant is not engaged in substantial gainful activity, the analysis

4 proceeds to step two.  At this step, the Commissioner considers the severity of the

5 claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6 "any impairment or combination of impairments which significantly limits [his or

7 her] physical or mental ability to do basic work activities," the analysis proceeds to

8 step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9 this severity threshold, however, the Commissioner must find that the claimant is

10 not disabled.  20 C.F.R. § 416.920(c).

11      At step three, the Commissioner compares the claimant's impairment to

12 severe impairments recognized by the Commissioner to be so severe as to preclude

13 a person from engaging in substantial gainful activity.  20 C.F.R. §

14 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15 enumerated impairments, the Commissioner must find the claimant disabled and

16 award benefits.  20 C.F.R. § 416.920(d).

17      If the severity of the claimant's impairment does not meet or exceed the

18 severity of the enumerated impairments, the Commissioner must pause to assess

19 the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20 defined generally as the claimant's ability to perform physical and mental work

REPORT AND RECOMMENDATION - 4

1  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

2  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

3        At step four, the Commissioner considers whether, in view of the claimant's

4  RFC, the claimant is capable of performing work that he or she has performed in

5  the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is

6  capable of performing past relevant work, the Commissioner must find that the

7  claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of

8  performing such work, the analysis proceeds to step five.

9        At step five, the Commissioner considers whether, in view of the claimant's

10 RFC, the claimant is capable of performing other work in the national economy.

11 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

12 must also consider vocational factors such as the claimant's age, education and

13 past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

14 adjusting to other work, the Commissioner must find that the claimant is not

15 disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to

16 other work, analysis concludes with a finding that the claimant is disabled and is

17 therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

18       The claimant bears the burden of proof at steps one through four above.

19 *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

20 step five, the burden shifts to the Commissioner to establish that (1) the claimant is

REPORT AND RECOMMENDATION - 5

1  capable of performing other work; and (2) such work "exists in significant

2  numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

3  700 F.3d 386, 389 (9th Cir. 2012).

4  **ALJ'S FINDINGS**

5  Plaintiff applied for Title XVI supplemental security income on March 17,

6  2011.  Tr. 281-89, 305.  Plaintiff initially alleged an onset date of January 19,

7  2010, which was later amended to October 15, 2011.  Tr. 96, 281.  The application

8  was denied initially, Tr. 179-82, and on reconsideration, Tr. 183-85.  Plaintiff

9  appeared at a hearing before an administrative law judge (ALJ) on August 15,

10  2012.  Tr. 51-67.  On October 26, 2012, the ALJ denied Plaintiff's claim.  Tr. 148-

11  65.  In July 2014, the Appeals Council remanded the matter for further

12  proceedings.  Tr. 173-75, 370-73.  Plaintiff appeared at a second hearing before a

13  different ALJ on February 2, 2015.  Tr. 71-114.  On April 9, 2015, the ALJ again

14  denied Plaintiff's claim.  Tr. 19-41.

15  At step one of the sequential evaluation analysis, the ALJ found Plaintiff has

16  not engaged in substantial gainful activity since October 15, 2011, the alleged

17  onset date.  Tr. 22.  At step two, the ALJ found Plaintiff has the following severe

18  impairments:  carpal tunnel syndrome, history of skull fracture with intracranial

19  injury, affective disorder not otherwise specific, anxiety disorder not otherwise

20  specified, and substance use disorder.  Tr. 22.  At step three, the ALJ found

Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following additional limitations:

> [He] cannot climb ladders, rope, or scaffolding. He can occasionally climb ramps or stairs. He can frequently stoop, kneel, crouch, and crawl. He can occasionally reach overhead bilaterally. He can frequently handle and finger bilaterally. He can perform work in which he can elevate his legs as needed during lunch and customary break times. He should avoid concentrated exposure to vibration and hazards. He cannot work at unprotected heights. He can understand, remember, and carry out work that is unskilled, routine, and repetitive. He can perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public is not precluded. With these limitations, the claimant can meet ordinary and reasonable employer expectations regarding attendance, production, and workplace behavior.

Tr. 28.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 39. At step five, after considering the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as production assembler, housekeeper, and hand packager. Tr. 40. Thus, the ALJ concluded Plaintiff has not been under a disability from March 17, 2011, through the date of the decision. Tr. 41.

REPORT AND RECOMMENDATION - 7

On October 5, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-5, making that decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly assessed the medical opinion evidence;

2. Whether the ALJ properly evaluated Plaintiff's symptom testimony; and

3. Whether the ALJ improperly failed to consider Listing 12.05.

ECF No. 14 at 3.

## DISCUSSION

**A.    Medical Opinion Evidence**

Plaintiff contends the ALJ improperly discounted the medical opinions of Melanie Mitchell, Psy.D; Stephen Curtis, Ph.D; John Slightam, M.D.; Richard K. Ries, M.D.; Katie Blackstone, MHP; Rachel Beda, M.D.; and Nancy Schwarzkopf, ARNP.  ECF No. 14 at 3-18.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

REPORT AND RECOMMENDATION - 8

1  (examining physicians); and (3) those who neither examine nor treat the claimant

2  but who review the claimant's file (nonexamining or reviewing physicians)."

3  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

4  "Generally, a treating physician's opinion carries more weight than an examining

5  physician's, and an examining physician's opinion carries more weight than a

6  reviewing physician's."  *Id.*  "In addition, the regulations give more weight to

7  opinions that are explained than to those that are not, and to the opinions of

8  specialists concerning matters relating to their specialty over that of

9  nonspecialists."  *Id.* (citations omitted).

10      If a treating or examining physician's opinion is uncontradicted, an ALJ may

11  reject it only by offering "clear and convincing reasons that are supported by

12  substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

13  "However, the ALJ need not accept the opinion of any physician, including a

14  treating physician, if that opinion is brief, conclusory and inadequately supported

15  by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

16  (internal quotation marks and brackets omitted).  "If a treating or examining

17  doctor's opinion is contradicted by another doctor's opinion, an ALJ may only

18  reject it by providing specific and legitimate reasons that are supported by

19  substantial evidence."  *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d

20  821, 830-31 (9th Cir. 1995)).

REPORT AND RECOMMENDATION - 9

The opinion of an acceptable medical source, such as a physician or psychologist, is given more weight than that of an "other source."  20 C.F.R. § 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources.  20 C.F.R. § 416.913(d) (2013).[1]  However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence.  *Nguyen*, 100 F.3d at 1467.  Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

---

[1] Some of the regulations cited in this decision were revised with an effective date in March 2017.  E.g., Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5875 (January 18, 2017) (revising 20 C.F.R. § 416.913).  Since the revisions were not effective at the time of the ALJ's decision, they do not apply to this case.  For revised regulations, the version effective at the time of the ALJ's decision is noted.

REPORT AND RECOMMENDATION - 10

1          *1.    Substantial Evidence*

2          At the outset, Plaintiff contends the ALJ's decision is not based on

3    substantial evidence because the ALJ gave weight only to medical and

4    psychological opinions based on evidence pre-dating the alleged onset date.  ECF

5    No. 14 at 3-5.  The ALJ is obligated to "consider all medical opinion evidence."

6    *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008); *see also* 20 C.F.R. §

7    416.927(c) (noting that ALJ will "evaluate every medical opinion").  However,

8    "[m]edical opinions that predate the alleged onset of disability are of limited

9    relevance."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th

10   Cir. 2008).  Here, Plaintiff observes that the ALJ relied primarily on medical and

11   psychological opinions pre-dating Plaintiff's alleged onset date of October 15,

12   2011:  the 2005 and 2006 opinions of Dr. Tarique, a treating physician; the July

13   2010 opinion of examining orthopedist Dr. Seltzer; the March 2011 opinion of

14   Chet Lumor, examining ARNP; and the August 2011 opinion of Dr. Comrie, a

15   reviewing psychologist.  ECF No. 14 at 4; Tr. 32-33, 39.  The only opinions

16   generated after the alleged onset date and relied upon by the ALJ are the December

17   2011 opinions of reviewing physician Dr. Stevick and reviewing psychologist Dr.

18

19

20

REPORT AND RECOMMENDATION - 11

1  Wolfe, whose record review at that point consisted primarily of pre-alleged onset

2  date evidence.  Tr. 34, 39.

3      By contrast, the ALJ rejected the remaining two medical opinions and five

4  psychological opinions made after the alleged onset date.[2]  The two medical

5  opinions generated after the alleged onset date and rejected by the ALJ include the

6  July 2012 opinion of Dr. Beda, a treating physician; and the March 2015 opinion

7  of Nancy Schwarzkopf, a treating nurse practitioner.  Tr. 33-34.  The five

8  psychological opinions generated after the alleged onset date and rejected by the

9  ALJ include the February 2012 opinion of Dr. Mitchell, an examining

10  psychologist; the July 2012 opinion of Dr. Curtis, an examining psychologist; the

11  July 2012 opinion of Dr. Ries, a treating psychologist; the October 2012 opinion of

12  Dr. Slightam, an examining psychiatrist; and the November 2012 opinion of Katie

13  Blackstone, a treating mental health therapist.  Tr. 36-39.

14      The Court agrees that the ALJ improperly relied on opinions which predate

15  the alleged onset date and rejected virtually every opinion meaningfully generated

16  _____

17  [2] The ALJ also rejected five additional opinions dated before the alleged onset date.

18  Tr. 33-37.  The ALJ gave partial weight to the July 2011 opinion of Dr. Kumar and

19  the September 2011 opinion of Dr. Hopfenback.  Tr. 36.  Plaintiff challenges only

20  the rejection of those opinions discussed herein.  Tr. 33-37.

REPORT AND RECOMMENDATION - 12

1  after the alleged onset date.  The ALJ cited inconsistency with the "longitudinal

2  record" as a basis for rejecting almost every opinion after the alleged onset date.

3  Tr. 33-39.  However, once the ALJ rejected all of the opinions substantively

4  generated after the alleged onset date, there is no almost no "longitudinal record"

5  remaining to constitute substantial evidence during the relevant period.  And, while

6  opinions and evidence generated before the alleged onset date may be relevant, and

7  in some cases persuasive, in this case the ALJ overlooked changes in Plaintiff's

8  condition which likely impacted the relevance of older opinions.  *See infra*.

9  Moreover, as discussed *infra*, numerous findings by the ALJ in rejecting the

10  various medical opinions are not supported by substantial evidence, further

11  reducing the reliability of the ALJ's findings overall.

12      On remand, the ALJ should develop the record and obtain updated medical

13  and psychological opinions.  The testimony of a medical or psychological expert

14  may be of particular help in considering the record overall and the weight given to

15  the opinion evidence during the relevant period.

16      *2.    Melanie Mitchell, Psy.D.*

17      Dr. Mitchell, an examining psychologist, completed a DSHS

18  Psychological/Psychiatric Evaluation form in February 2012.  Tr. 602-11.  She

19  diagnosed post-traumatic stress disorder, chronic, severe with intermittent

20  psychotic features (psychosis related to trauma); major depressive disorder,

REPORT AND RECOMMENDATION - 13

1  chronic, severe; panic disorder with agoraphobia; alcohol dependence, in early full

2  remission; and amphetamine abuse, in early full remission.  Tr. 603.  She opined

3  Plaintiff was able to follow complex instructions, but not consistently; he would

4  most likely need significant supervision in a work environment; his fatigue and

5  depression would impair his ability to be aware of hazards and take precautions; it

6  would be inappropriate for Plaintiff to work with the public or have limited public

7  contact due to his high anxiety, suspiciousness, and fear; he would likely have

8  trouble maintaining appropriate behavior; and his symptoms interfere with his

9  ability to keep a schedule and sustain a productive pace in a work environment.

10  Tr. 604.  The ALJ gave minimal weight to Dr. Mitchell's opinion.  Tr. 36-37.

11      Because Dr. Mitchell's opinion was contradicted by the opinions of Dr.

12  Comrie, Tr. 120-22, and Dr. Wolfe, Tr. 140-41, the ALJ was required to provide

13  specific and legitimate reasons for rejecting Dr. Mitchell's opinion.  *Bayliss*, 427

14  F.3d at 1216.

15      First, the ALJ found Dr. Mitchell's opinion does not specify the degree of

16  limitations assessed and is vague and equivocal.  Tr. 36-37.  The ALJ does not

17  describe which portion of the opinion is "vague" or which limitations are

18  inadequately described by Dr. Mitchell.  Tr. 36-37.  The residual functional

19  capacity determination is the ALJ's responsibility, not the physician's.  *See*

20  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  For example, Dr.

REPORT AND RECOMMENDATION - 14

1    Mitchell found, "Client's ability to respond appropriately to routine changes in a

2    typical work setting is unlikely to be adequate in settings that match client's skill

3    set." Tr. 604. "Unlikely to be adequate" suggests Dr. Mitchell's opinion is that

4    Plaintiff would generally not be able to respond to routine changes in a typical

5    work setting. Similarly, Dr. Mitchell opined, "Client's very high anxiety

6    suspiciousness and fear for [his] own safety (PTSD) would make it inappropriate

7    to work with public or limited public contact." Tr. 604. This suggests that Dr.

8    Mitchell's opinion is that Plaintiff should have no public contact. These are not

9    vague or ambiguous limitations. Without more, this is not a specific, legitimate

10   reason for rejecting Dr. Mitchell's opinion.

11        Second, the ALJ found that Dr. Mitchell made minimal references to

12   objective evidence. Tr. 37. A medical opinion may be rejected if it is unsupported

13   by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec.*

14   *Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947,

15   957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001);

16   *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Although the ALJ

17   discounts Dr. Mitchell's opinion for a lack of citations, it is not apparent that the

18   ALJ reviewed the entire opinion. ECF No. 14 at 8. The ALJ referenced Exhibit

19   18F, which includes only two of the four pages of Dr. Mitchell's complete opinion.

20   Tr. 26, 36-37, 813-14. Exhibit 10F contains the entire four-page opinion. Tr. 602-

REPORT AND RECOMMENDATION - 15

07.  The pages overlooked by the ALJ indicate Dr. Mitchell observed symptoms

such as psychomotor agitation/retardation, fatigue, difficulty concentrating,

distraction, intense physiological response to triggers and physiological reactivity,

detachment, and restricted range of affect.  Tr. 602.  Dr. Mitchell noted the basis

for assessing a GAF rating of 40 was "client's presentation, administration of

MSE, client's self-report and records reviewed."  Tr. 603.  Thus, the ALJ's

determination that Dr. Mitchell's opinion does not cite objective findings is not

based on substantial evidence.

Additionally, both exhibits include the details of the mental status exam and

the results of the Trail Making Test and the Rey 15-item test.  Tr. 606, 815.  The

ALJ noted certain positive findings from the mental status exam, such as Plaintiff's

fair hygiene, good eye contact, cooperative behavior, normal speech, logical

thought process, and good judgment, but overlooked findings that his facial

expressions were inappropriate, there was evidence of psychomotor agitation, he

appeared depressed and highly anxious, and on the Trail making testing he scored

below average on Part B.  Tr. 606.  Further, there was no evidence of feigning or

factitious behavior.  Tr. 606.  Dr. Mitchell's observation that Plaintiff appeared

depressed and highly anxious supports, for example, the ALJ's finding that

Plaintiff's anxiety would prevent him from working with the public.  Tr. 604, 606.

REPORT AND RECOMMENDATION - 16

1    Thus, the ALJ's reasoning does not constitute a specific, legitimate reason for

2    rejecting Dr. Mitchell's opinion.

3        Third, the ALJ found Dr. Mitchell appears to have relied primarily on

4    Plaintiff's subjective symptom reports.  Tr. 37.  A physician's opinion may be

5    rejected if it is based on a claimant's subjective complaints which were properly

6    discounted.  *Tonapetyan*, 242 F.3d at 1149; *Morgan v. Comm'r of Soc. Sec.*

7    *Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th

8    Cir. 1989).  However, when an opinion is not more heavily based on a patient's

9    self-reports than on clinical observations, there is no evidentiary basis for rejecting

10   the opinion.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Ryan v.*

11   *Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008).  Because it

12   is not clear that the ALJ properly considered the entirety of Dr. Mitchell's opinion

13   and because the ALJ's other reasons for rejecting Dr. Mitchell's opinion are not

14   properly supported, this reason is also inadequate.  Further, as discussed *infra*, the

15   ALJ's findings regarding Plaintiff's symptom complaints are not legally sufficient.

16   Thus, this is not a specific, legitimate reason for rejecting Dr. Mitchell's opinion.

17       Fourth, the ALJ found the longitudinal record since 2011 is inconsistent with

18   Plaintiff's allegations of psychological disability.  Tr. 37.  As discussed *supra*, the

19   ALJ's assessment of the longitudinal record is not based on substantial evidence,

20   so this is not a specific, legitimate reason for rejecting Dr. Mitchell's opinion.

REPORT AND RECOMMENDATION - 17

1    Fifth, the ALJ found Plaintiff's activities are inconsistent with Plaintiff's

2  allegations of psychological disability.  Tr. 37.  An ALJ may discount a medical

3  source opinion to the extent it conflicts with the claimant's daily activities.

4  *Morgan*, 169 F.3d at 601-02.  The ALJ notes Plaintiff told Dr. Mitchell he was in a

5  work release program, taking chemical dependency classes, and completed

6  activities of daily living without assistance.  Tr. 37, 604.  The ALJ does not explain

7  how these activities are inconsistent with, for example, Dr. Mitchell's finding that

8  Plaintiff would likely need significant supervision in a work environment.  Tr. 604.

9  A work release program and chemical dependency courses, in particular, suggest

10  supervised environments which may not necessarily be comparable to work in a

11  competitive environment.  "The ALJ must do more than offer his conclusions.  He

12  must set forth his own interpretations and explain why they, rather than the

13  doctors', are correct."  *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

14  The ALJ also references a general discussion of Plaintiff's activities, Tr. 26, but

15  again, the ALJ fails to explain or describe any consistencies with Dr. Mitchell's

16  conclusions.  Tr. 37.  This does not constitute a specific, legitimate reason for

17  rejecting Dr. Mitchell's opinion.

18    *3.    Steven Curtis, Ph.D.*

19    Dr. Curtis, an examining psychologist, completed a psychological evaluation

20  in July 2012.  Tr. 772-83.  Dr. Curtis diagnosed alcohol dependence, amphetamine

REPORT AND RECOMMENDATION - 18

1  dependence, and cocaine abuse, all in early full remission; delusional disorder,

2  persecutory type, provisional; and anxiety disorder NOS with comorbid symptoms

3  of depression.  Tr. 779.  Dr. Curtis opined that Plaintiff demonstrated extremely

4  low adaptive behavioral skills, has major impairments in his daily functioning, and

5  has memory impairment.  Tr. 779.  Dr. Curtis found Plaintiff is functioning in the

6  low-average range of cognitive skills; he has challenges with his short-term

7  memory; he experiences continuing symptoms of depression, anxiety,

8  attention/memory difficulty, and paranoia.  Tr. 778.  He indicated that once

9  Plaintiff maintained sobriety for a continued period of time, the true nature of his

10  challenges would be more easily understood.  Tr. 778. The ALJ gave minimal

11  weight to Dr. Curtis's opinion.

12      Because Dr. Curtis's opinion was contradicted by the opinion of Dr. Comrie,

13  Tr. 120-22, and Dr. Wolfe, Tr. 140-41, the ALJ was required to provide specific

14  and legitimate reasons for rejecting Dr. Curtis's opinion.  *Bayliss*, 427 F.3d at

15  1216.

16      First, the ALJ found that Dr. Curtis based his assessment on Plaintiff's

17  subjective reporting of psychological difficulties and his lack of persistence when

18  performing psychometric testing.  As noted *supra*, a physician's opinion may be

19  rejected if it is primarily based on a claimant's subjective complaints which were

20  properly rejected, *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 599; *Fair*,

REPORT AND RECOMMENDATION - 19

885 F.2d at 604; *see also Ghanim*, 763 F.3d at 1162.  There is no foundation for

the ALJ's conclusion that Dr. Curtis "appears to have based his assessment" on

Plaintiff's subjective reporting of symptoms.  Tr. 38.  Dr. Curtis met with Plaintiff

on five occasions and listed the foundation for his conclusions:  Adaptive Behavior

Assessment System 2 (ABAS); clinical interview; correspondence with case

manager at KCDDC;[3] records review; Repeatable Battery for the Assessment of

Neuropsychological Status (RBANS); Wechsler Adult Intelligence Scale – Fourth

Edition (WAIS-IV); Wechsler Memory Scale – Third Edition (WMS-III); and the

Wide Range Achievement Test – Fourth Edition (WRAT-IV).  Tr. 772, 775-77.

Multiple and various sources of information formed the basis for Dr. Curtis's

opinion, including numerous objective tests, and therefore the ALJ's assertion is

not supported by substantial evidence.

The ALJ also noted that Dr. Curtis wrote that Plaintiff "often gave up

quickly during assessments" and his "test scores for intellectual and memory

functioning are most likely more developed."  Tr. 38, 778.  The ALJ took those

two phrases out of context to invalidate Dr. Curtis's entire eight-page opinion.  In

context, Dr. Curtis wrote:

> As noted before, he is quite motivated and appears to be on a road to
> success.  Testing revealed that Mr. T[.] was able to increase his

---

[3] King County Drug Dependency Court

REPORT AND RECOMMENDATION - 20

performance levels when given encouragement and prompts. His performance decreased when additional direction was not given and he often participated in negative self-talk and increased anxiety that worsened his performance. Mr. T[.] often gave up quickly during assessments, which also would significantly change test results. This would suggests that Mr. T[.]s' scores for intellectual and memory functioning are most likely more developed then [sic] what he presented and is most likely functioning at a low average range. This means that while Mr. T[.] has some memory and attention problems, he is able to learn new information, retain it, and apply it to his environment when given additional encouragement, support, and direction.

Tr. 778-79. In proper context, it is apparent that Dr. Curtis believed Plaintiff "gave up quickly" as a symptom his condition, not because of a lack of motivation or a desire to mislead the examiner. Tr. 38. Notwithstanding context, the ALJ determined that Plaintiff "can persist with competitive fulltime [sic] work activity, without any heightened need for supervision," Tr. 38, which is directly contrary to Dr. Curtis's finding that Plaintiff needs supervision and support, Tr. 779. The ALJ dismissed Dr. Curtis's opinion on the basis of these two phrases taken out of context and overlooked the detailed, thorough, and analytical explanation for Dr. Curtis's conclusions. Defendant overstates the ALJ's finding about these phrases to argue this constitutes evidence of malingering. ECF No. 15 at 3-4. Further, Defendant improperly characterizes Dr. Curtis's statements as indicating "Plaintiff gave poor effort on psychometric testing," when in fact Dr. Curtis expressly found to the contrary ("he is quite motived"). ECF No. 15 at 7; Tr. 778. The ALJ improperly drew conclusions from two phrases in the opinion that are not

REPORT AND RECOMMENDATION - 21

1 supported by the opinion as a whole and thus improperly rejected Dr. Curtis's

2 assessment on this basis.

3        Second, the ALJ found Plaintiff's work history and activities since 2011 are

4 inconsistent with Dr. Curtis's opinion. Tr. 38. As noted *supra*, ALJ may discount

5 a medical source opinion to the extent it conflicts with the claimant's activities.

6 *Morgan*, 169 F.3d at 601-02. The ALJ considered Plaintiff's work history in 2009

7 and 2010, well before the alleged onset date. Tr. 29, 38. The ALJ found Plaintiff

8 has not engaged in substantial gainful activity since the alleged onset date, Tr. 22,

9 which is the relevant period. Further, the ALJ stated, "[m]any of the claimant's

10 allegedly disabling conditions have not prevented past work" and "[t]he claimant's

11 examination findings indicate no significant worsening of his psychological state

12 approximate to his alleged onset date." Tr. 29. However, the ALJ overlooked the

13 effects of the March 2011 assault suffered by Plaintiff, during which his jaw was

14 broken and as a result of which he experienced increased mental health symptoms.

15 *See* Tr. 80, 584-85, 603, 696, 772. Further, the ALJ does not discuss or describe

16 any other activities supporting the conclusion that Plaintiff's activities are

17 inconsistent with his allegations. The ALJ's reasoning is not supported by

18 substantial evidence and this is not a specific, legitimate reason for rejecting Dr.

19 Curtis's opinion.

20

REPORT AND RECOMMENDATION - 22

1    Third, the ALJ found Plaintiff's participation in a 16-week work release

2    program in 2012 is inconsistent with Dr. Curtis's opinion. Tr. 38. The ALJ found

3    it significant that Plaintiff testified his attendance had been good and he had no

4    special accommodations. Tr. 36, 80-82. Presumably, the ALJ cited this evidence

5    in support of the conclusion that Plaintiff can persist in competitive, full-time

6    work. Tr. 36. However, as Plaintiff points out, Dr. Curtis did not opine that

7    Plaintiff would have a problem with attendance. ECF No. 14 at 13. In fact, Dr.

8    Curtis recommended Plaintiff for the Drug Court Diversion Program "with

9    accommodations" such as visual prompts, positive emotional support, independent

10   and direct instruction, and one-on-one explanations. Tr. 779. Notwithstanding,

11   Dr. Curtis opined Plaintiff has "extremely low adaptive behavioral skills and has

12   major impairments in his daily functioning, including memory impairment. He

13   will require heightened supervision." Tr. 779. The ALJ's conclusions regarding

14   Dr. Curtis's assessment are not supported by substantial evidence, and this is not a

15   specific, legitimate reason for rejecting the opinion.

16   Fourth, the ALJ cited the longitudinal findings as a reason for rejecting Dr.

17   Curtis's opinion. As discussed *supra*, this finding is not properly supported by

18   substantial evidence.

19

20

REPORT AND RECOMMENDATION - 23

1      *4.    John Slightam, M.D.*

2          Dr. Slightam, an examining psychiatrist, wrote an opinion letter in October

3      2012.  Tr. 1017.  He diagnosed bipolar disorder and indicated Plaintiff's pattern of

4      mood instability is rapid and unpredictable which would itself preclude gainful

5      employment.  Tr. 1017.  He also reported unpredictable panic attacks and

6      increasing ruminative worries.  Tr. 1017.  Dr. Slightam noted Plaintiff was

7      recovering from polysubstance abuse and had been clean and sober for 10 months

8      at the time of the opinion.  Tr. 1017.  Dr. Slightam concluded that Plaintiff's

9      history, severity of symptoms, unpredictable nature and resistance to treatment

10     result in an inability to work a predictable 40 hour work week.  Tr. 1017.  Dr.

11     Slightam opined that Plaintiff is psychiatrically disabled.  Tr. 1017.  The ALJ gave

12     minimal weight to Dr. Slightam's opinion.  38.

13         Because Dr. Slightam's opinion was contradicted by the opinion of Dr.

14     Comrie, Tr. 120-22, and Dr. Wolfe, Tr. 140-41, the ALJ was required to provide

15     specific and legitimate reasons for rejecting Dr. Slightam's opinion.  *Bayliss*, 427

16     F.3d at 1216.

17         The ALJ gave one reason for rejecting Dr. Slightam's opinion:  the

18     assessment made no reference to objective evidence and therefore relied solely on

19

20

REPORT AND RECOMMENDATION - 24

1  Plaintiff's subjective reporting.[4]  Tr. 38.  As noted *supra*, a medical opinion may

2  be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at 1228.

3  Plaintiff argues the mental status exam conducted by Dr. Slightam in August 2012

4  constitutes objective evidence supporting the opinion.  ECF No. 14 at 15 (citing Tr.

5  1018-19).  However, the ALJ addressed the mental status exam findings and

6  observed that there were no findings regarding concentration, attention, or

7  memory, and his exam findings were largely positive such as pleasant and

8  cooperative, good eye contact, relevant and directed thought process, and no

9  obvious thought disorder.  Tr. 38, 1019.  The only exam findings potentially

10  supporting Dr. Slightam's opinion are that Plaintiff's affect was consistent with his

11  frustrated mood and judgment was considered to be impulsive and immature by

12  history.  Tr. 1019.  Thus, the ALJ reasonably found that Dr. Slightam's exam

13  results do not constitute objective evidence supporting his opinion that Plaintiff is

14  "psychiatrically disabled."  Tr. 38, 1017.

15  _____

16  [4] The ALJ also briefly indicated, "[b]ased on the evidence summarized in the prior

17  discussion of the 'paragraph B' criteria, I give greater weight to other

18  psychological assessment."  Tr. 38.  As discussed *supra*, this cursory reference to a

19  summary of evidence and activities is not sufficiently specific to constitute a

20  specific, legitimate reason for rejecting the opinion.

REPORT AND RECOMMENDATION - 25

Notwithstanding, the ALJ's findings regarding Plaintiff's subjective complaints are not legally sufficient.  *See infra*.  This call into question the ALJ's finding that an opinion based on Plaintiff's complaints is unreliable.  Therefore, this is not a specific, legitimate reason for ejecting Dr. Slightam's opinion.

### 5.   *Richard K. Ries, M.D.*

Dr. Ries, a treating psychiatrist, completed a Mental Residual Functional Capacity Assessment form which is undated but was noted by the ALJ as received in July 2012.  Tr. 37, 769-71.  Dr. Ries assessed eight marked limitations and three severe limitations, including severe limitations in the ability to understand and remember short and simple instructions, the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptom and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 769-71.  Dr. Ries indicated, "[patient] is on significant medication to help his paranoia and we are evaluating response."  Tr. 771.  The ALJ gave minimal weight to Dr. Ries's evaluation.  Tr. 771.

Because Dr. Ries's opinion was contradicted by the opinions of Dr. Comrie, Tr. 120-22, and Dr. Wolfe, Tr. 140-41, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Ries's opinion.  *Bayliss*, 427 F.3d at 1216.

REPORT AND RECOMMENDATION - 26

1    First, the ALJ found Dr. Ries's assessment is based on a single sentence

2    which makes cursory references to Plaintiff's subjective reporting which the ALJ

3    found to be less than fully credible.  Tr. 37.  A medical opinion may be rejected by

4    the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported.

5    *Bray*, 554 F.3d at1228; *Thomas*, 278 F.3d at 957.  The form completed by Dr. Ries

6    is a check-box form with room for narrative comments.  Tr. 770-71.  Dr. Ries

7    provided only this explanation for the three severe and eight marked limitations

8    assessed:  "P[atient] is on significant medication to help his paranoia and we are

9    evaluating response."  Tr. 771.  The ALJ reasonably concluded that this statement

10   is an insufficient explanation for the limitations assessed.  Tr. 37.  However, as

11   noted *supra* and *infra*, the ALJ's findings regarding Plaintiff's credibility are

12   suspect, calling into question the ALJ's conclusions about an opinion based on

13   Plaintiff's self-report.  Thus, this is not a specific, legitimate reason for rejecting

14   Dr. Ries's opinion.

15       Second, the ALJ found Dr. Ries's assessment is inconsistent with his work

16   history, activities since 2011, and longitudinal record.  Tr. 37.  As discussed,

17   *supra*, the ALJ's characterization of these factors is not supported by substantial

18   evidence.  These are not specific, legitimate reasons for rejecting Dr. Ries's

19   opinion.

20

REPORT AND RECOMMENDATION - 27

6.    *Kate Blackstone, MHP, LSWAIC*

Ms. Blackstone, a treating mental health therapist, wrote a letter in November 2012 opining that Plaintiff was unable to engage in a 40-hour work week due to mood instability including symptoms like irritation, inability to concentrate, lack of energy or motivation, racing thoughts, and symptoms of a manic state. Tr. 1021. The ALJ gave minimal weight to this assessment. Tr. 38-39.

As a mental health therapist, Ms. Blackstone is an "other source" under the regulations. 20 C.F.R. § 416.913(d) (2013). Thus, the ALJ was required to cite germane reasons for rejecting the opinion. *See Dodrill*, 12 F.3d at 919.

First, the ALJ found Ms. Blackstone's opinion has no objective basis for her cursory assessment and is based solely on Plaintiff's subjective reporting. Tr. 38-39. The ALJ's own cursory statement dismissing Ms. Blackstone's opinion ignored the fact that the opinion references 15 one-hour psychotherapy sessions. Tr. 1021. However, treatment notes from those psychotherapy sessions do not appear to be included in the record. *See* Tr. 1022-40. Since this matter is remanded on other grounds, the ALJ should develop the record regarding treatment notes from Pioneer Adult Counseling Services in order to properly evaluate the basis for Ms. Blackstone's opinion.

REPORT AND RECOMMENDATION - 28

1    Second, the ALJ found Ms. Blackstone's assessment is inconsistent with

2    Plaintiff's work history, activities since 2011, and the longitudinal record.  Tr. 39.

3    As discussed, *supra*, the ALJ's characterization of these factors is not supported by

4    substantial evidence.  These are not a specific, legitimate reasons for rejecting Ms.

5    Blackstone's opinion.

6        7.    *Rachel Beda, M.D.*

7    Dr. Beda, a treating physician, completed a Medical Report form in July

8    2012.  Tr. 975-76.  She diagnosed right hand trigger finger; chronic lower

9    extremity varicose veins, severe; peripheral neuropathy; and left foot bunion.  Tr.

10   975.  She indicated Plaintiff needed to lie down for two to three hours per day to

11   elevate his varicose veins.  Tr. 975.  She opined that regular work would cause

12   Plaintiff's leg varicosities to worsen if it involved standing or frequent ambulation.

13   Tr. 976.  Dr. Beda indicated Plaintiff would miss work four or more days per

14   month due to his condition, and that Plaintiff is "[u]nable to sustain a 40 h[our]

15   week without suffering worsening lower extremity swelling [and] pain, requiring

16   days of[f] to elevate legs and relieve pressure."  Tr. 976.  The ALJ gave minimal

17   weight to Dr. Beda's assessment.  Tr. 33.

18   Because Dr. Beda's opinion was contradicted by the opinion of Dr. Stevick,

19   Tr. 137-39, the ALJ was required to provide specific and legitimate reasons for

20   rejecting Dr. Beda's opinion.  *Bayliss*, 427 F.3d at 1216.

REPORT AND RECOMMENDATION - 29

First, the ALJ found there is no objective basis for Dr. Beda's assessment of physical disability. Tr. 33. As noted *supra*, a medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228. The ALJ observed that in March 2012 when Plaintiff established care with Dr. Beda, he did not complain of swelling in his legs and on exam and he had no warmth or swelling in his musculoskeletal system. Tr. 33, 998-90. In July 2012, Plaintiff complained of varicose veins in his right leg that limited his ability to walk due to swelling and throbbing. Tr. 33, 983. He reported sitting or lying down helps and prominent varicose veins were noted on his left lower extremity with no redness, warmth or swelling. Tr. 983-84. He was advised to try compression socks. Tr. 984. Later that month, he returned to Dr. Beda for a boil and Dr. Beda completed the Medical Report form. Tr. 975-78. The ALJ noted that after July 2012, there is no documented treatment for Plaintiff's lower extremities until October 2014 when Plaintiff complained of knee pain. Tr. 33, 1350, 1352. These findings all reasonably support the ALJ's conclusion that Dr. Beda's opinion is not supported by objective evidence.[5] *See also* Tr. 23-24. This is a specific, legitimate reason for rejecting Dr. Beda's opinion.

------

[5] Further, based on the record it is not apparent that Plaintiff's varicose vein condition met the duration requirement.

REPORT AND RECOMMENDATION - 30

Second, the ALJ found Dr. Beda's opinion is incompatible with Plaintiff's completion of a 16-week work release program in 2012. Tr. 33. As noted *supra*, Plaintiff testified his attendance had been good and he had no special accommodations. Tr. 80-82. Although this did not constitute a specific, legitimate reason for rejecting Dr. Curtis's opinion, *supra*, it is a specific, legitimate reason for rejecting Dr. Beda's opinion. Unlike Dr. Curtis, Dr. Beda indicated Plaintiff would have a problem with attendance because he would miss four or more days of work per month. Tr. 976. This was reasonably determined by the ALJ to be inconsistent with Plaintiff's successful completion of the 16-week program.

Third and fourth, the ALJ cited generally Plaintiff's activities before and after October 2011 and the overall treatment record and longitudinal exam findings as reasons for rejecting Dr. Beda's opinion. As previously determined with respect the psychological opinions, *supra*, these reasons are not sufficiently specific to constitute specific, legitimate reasons supported by substantial evidence. Notwithstanding, any error is harmless and moot since this matter is remanded on other grounds.

8.    *Nancy Schwarzkopf, ARNP*

Ms. Schwarzkopf, a treating provider, completed a Medical Report form in March 2015. Tr. 1387-89. Ms. Schwarzkopf reported Plaintiff's range of motion was reduced in the bilateral upper extremities. Tr. 1387. She wrote "n/a" when

REPORT AND RECOMMENDATION - 31

1   asked if Plaintiff needed to lie down during the day.  Tr. 1387.  Ms. Schwarzkopf

2   opined that work on a regular and continuous basis would cause Plaintiff's

3   condition to deteriorate and noted that Plaintiff was "trained for construction –

4   labor" and was "unable to perform due to pain ROM restriction."  Tr. 1388.  She

5   further opined that Plaintiff was limited to sedentary work, would miss work four

6   or more days per month, and could occasionally use his upper extremities.  Tr.

7   1388.  She noted that the limitations had been reported by Plaintiff to have existed

8   for more than two years.  Tr. 1389.  The ALJ gave minimal weight to Ms.

9   Schwarzkopf's opinion.  Tr. 34.

10      As a nurse practitioner, Ms. Schwarzkopf is an "other source" under the

11  regulations.  20 C.F.R. § 416.913(d) (2013).  Thus, the ALJ was required to cite

12  germane reasons for rejecting the opinion.  *See Dodrill*, 12 F.3d at 919.

13      First, the ALJ determined Ms. Schwarzkopf's exam findings are an

14  inadequate basis for her assessment.  Tr. 34.  A physician's opinion may be

15  rejected if it is unsupported by the physician's treatment notes.  *See Connett v.*

16  *Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).  The ALJ noted that in June 2014, Dr.

17  Foster recorded full range of motion in both shoulders on exam.  Tr. 34, 1357.  On

18  exam in November 2014, Ms. Schwarzkopf noted Plaintiff's shoulder movement

19  was limited by pain.  Tr. 1348.  Plaintiff declined physical therapy and indicated

20  "he is active and performs physical activity most days."  Tr. 1345.  In January

REPORT AND RECOMMENDATION - 32

1 2015, Ms. Schwarzkopf ordered an x-ray of Plaintiff's shoulders and physical

2 therapy due to chronic pain.  Tr. 1366.  Although the x-ray results are not part of

3 the record, Ms. Schwarzkopf indicated x-rays of Plaintiff's bilateral shoulders

4 showed signs of left side arthrosis acromioclavicular joint; right side arthrosis; and

5 left side tendonitis with calcification.  Tr. 1387.  This objective evidence,

6 combined with Ms. Schwarzkopf's findings of reduced range of motion, suggests

7 the possibility of a shoulder impairment.

8          Further, the ALJ asserted Plaintiff's shoulder issue had only recently

9 surfaced at the time of the ALJ's decision.  Tr. 34.  To be found disabled, a

10 claimant must be unable to engage in any substantial gainful activity due to an

11 impairment which "can be expected to result in death or which has lasted or can be

12 expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

13 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).  Dr.

14 Woolston actually reported shoulder problems one month before Ms.

15 Schwarzkopf's findings.[6]  Since the first mention of Plaintiff's shoulder issue was

16

17 _____

18 [6] In October 2014, Dr. Woolston recorded Plaintiff's complaint of bilateral

19 shoulder pain with decreased mobility.  Tr. 1350.  Plaintiff had significant pain

20 with a straight arm raise on the right and moderate pain on the L.  Tr. 1352.  Dr.

REPORT AND RECOMMENDATION - 33

1   in October 2014, the duration requirement had not been met by the time of the

2   ALJ's decision in April 2015.  *See also* Tr. 24.  Because this matter is remanded on

3   other grounds, the ALJ should obtain and consider updated medical evidence

4   regarding Plaintiff's shoulder and, if appropriate, make a new assessment of

5   Plaintiff's shoulder condition.

6   **B.     Plaintiff's Symptom Complaints**

7          Plaintiff contends the ALJ improperly rejected his symptom complaints.

8   ECF No. 14 at 18-20.  An ALJ engages in a two-step analysis to determine whether

9   a claimant's testimony regarding subjective pain or symptoms is credible.  "First,

10  the ALJ must determine whether there is objective medical evidence of an

11  underlying impairment which could reasonably be expected to produce the pain or

12  other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks

13  omitted).  "The claimant is not required to show that [his] impairment could

14  reasonably be expected to cause the severity of the symptom []he has alleged; []he

15  need only show that it could reasonably have caused some degree of the

16  symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

17  quotation marks omitted).

18  _____

19  Woolston opined it was likely a rotator cuff strain and gave Plaintiff some

20  exercise.  Tr. 1350.

REPORT AND RECOMMENDATION - 34

1    Second, "[i]f the claimant meets the first test and there is no evidence of

2    malingering, the ALJ can only reject the claimant's testimony about the severity of

3    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

4    rejection." *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted).

5    "General findings are insufficient; rather, the ALJ must identify what testimony is

6    not credible and what evidence undermines the claimant's complaints." *Id*.

7    (quoting *Lester*, 81 F.3d at 834); *see also Thomas*, 278 F.3d at 958 ("[T]he ALJ

8    must make a credibility determination with findings sufficiently specific to permit

9    the court to conclude that the ALJ did not arbitrarily discredit claimant's

10    testimony.").  "The clear and convincing [evidence] standard is the most

11    demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

12    1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

13    924 (9th Cir. 2002)).

14    In making an adverse credibility determination, the ALJ may consider, *inter*

15    *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

16    claimant's testimony or between his testimony and his conduct; (3) the claimant's

17    daily living activities; (4) the claimant's work record; and (5) testimony from

18    physicians or third parties concerning the nature, severity, and effect of the

19    claimant's condition.  *Thomas*, 278 F.3d at 958-59.

20

REPORT AND RECOMMENDATION - 35

1    First, the ALJ discounted Plaintiff's symptom testimony because many of

2 his impairments have not prevented past work which ended for reasons unrelated

3 to his functional capacity.  Tr. 30.  An ALJ may consider that a claimant stopped

4 working for reasons unrelated to the allegedly disabling condition in making a

5 credibility determination.  *See Tommasetti*, 533 F.3d at 1040; *Bruton v. Massanari*,

6 268 F.3d 824, 828 (9th Cir. 2001).  Plaintiff testified his last job ended in 2010 due

7 to a conviction for driving while intoxicated, which violated his probation and

8 resulted in a return to prison.  Tr. 29, 92; *see also* Tr. 921 (indicating January 2010

9 DUI).  While his last job ended for a reason other than disability, this occurred

10 before he was assaulted in March 2011, and well before his alleged onset date of

11 October 2011.  *See* Tr. 80, 584-85, 603, 696, 772.  Because this matter is being

12 remanded for reconsideration of the medical evidence, the Court instructs that the

13 ALJ consider the timing of the assault in assessing this factor.

14    Second, the ALJ found the "longitudinal record" indicates Plaintiff's

15 functioning has been generally normal psychological functioning with limited

16 treatment, and minimal physical limitations.  Tr. 30.  However, because of the

17 ALJ's errors in considering the opinion evidence, the ALJ's characterization of the

18 longitudinal record is questionable.  Thus, this is not a clear and convincing reason

19 for the credibility finding.

20

REPORT AND RECOMMENDATION - 36

1    Third, the ALJ cited Plaintiff's substance use to suggest Plaintiff is less than

2    fully credible.  Tr. 31.  Conflicting or inconsistent testimony concerning alcohol or

3    drug use can contribute to an adverse credibility finding.  *Thomas*, 278 F.3d at 959;

4    *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).  The ALJ cited several

5    instances in the record indicating Plaintiff continued to consume alcohol.  Tr. 30-

6    31 (citing Tr. 85, 1278, 1345).  However, the ALJ found substance use does not

7    materially affect Plaintiff's abilities, Tr. 32, and the ALJ failed to demonstrate any

8    inconsistency or lack of candor with respect to Plaintiff's alcohol or substance use.

9    To the contrary, Plaintiff admitted substance use even when it may have been

10    against his interest, perhaps suggesting a level of credibility rather than detracting

11    from it.  This is not a clear and convincing reason supported by substantial

12    evidence for the credibility determination.

13    Fourth, the ALJ found Plaintiff's "recent manipulation" of medical services

14    for secondary gain reflected a lack of credibility.  Tr. 30.  In making a credibility

15    evaluation, the ALJ may rely on ordinary techniques of credibility evaluation.

16    *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ references a single

17    instance in April 2013 when Plaintiff was brought to the hospital from a "sobering

18    house" because he stated he was going through alcohol withdrawal.  Tr. 1098.

19    After examination, Plaintiff admitted he did not want to return to the clean and

20    sober house because he had been drinking all night.  Tr. 1098.  The provider

REPORT AND RECOMMENDATION - 37

indicated Plaintiff admitted to seeking secondary gain by coming to the hospital rather than going home. Tr. 1100. Plaintiff was diagnosed with acute alcohol intoxication. Tr. 1100. This single instance where Plaintiff, who had at times been homeless, *see* Tr. 772, tried to protect his housing when he was acutely intoxicated does not constitute substantial evidence supporting the conclusion that Plaintiff is not generally credible.

Fifth, the ALJ found Plaintiff's recent activities are inconsistent with his alleged limitations. Tr. 32. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins*, 261 F.3d at 857. However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). Notwithstanding, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. *Fair,* 885 F.2d at 603. Furthermore, "Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Even if some of Plaintiff's activities may be somewhat

inconsistent with some of his claimed limitations, because of problems discussed throughout this decision regarding the ALJ's other findings regarding some of Plaintiff's activities, this is not a clear and convincing reason for the credibility finding.

**C.    Listing 12.05C**

Plaintiff contends the ALJ improperly failed to consider Listing 12.05 for intellectual disability.  ECF No. 14 at 20.  The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 416.925 (2011).  To meet a listed impairment, a claimant must establish that he meets each characteristic of a listed impairment relevant to his or her claim.  20 C.F.R. § 416.925(d) (2011).  The claimant bears the burden of establishing he meets a listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (2005).  If a claimant meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. §§ 416.920(a)(4)(iii).

Listing 12.05C has three main components: (1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation.  20 C.F.R. Part 404, Subpt. P,

REPORT AND RECOMMENDATION - 39

App. 1 § 12.05C (January 2, 2015);[7] *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). Plaintiff asserts he "has a valid Verbal IQ of 70 with evidence of deficits in adaptive functioning, a presumption this has remained since age 22, and has other severe impairments." ECF No. 14 at 20 (citing Tr. 22, 776-77, 782). Defendant contends the IQ score of 70 was given in the context of poor effort, suggesting the ALJ was not required to consider Listing 12.05C. ECF No. 15 at 8. Because this matter is remanded on other grounds, the Court does not reach this issue. On remand, the ALJ shall consider Listing 12.05 and make legally sufficient findings as are appropriate.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. On remand, the ALJ shall reconsider the medical and psychological opinion

---

[7] The Court evaluates Plaintiff's impairment under the version of Listing 12.05C in effect at the time the ALJ rendered the decision. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138 n. 1 (2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

REPORT AND RECOMMENDATION - 40

evidence after developing the record, ensuring that there is adequate creditable evidence from the relevant period to support findings based on substantial evidence.  The ALJ shall also consider listing 12.05 and reconsider Plaintiff's symptom complaints.  The testimony of a medical or psychological expert may be appropriate.

Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, be GRANTED.

2. Defendant's Motion for Summary Judgment, ECF No. 15, be DENIED.

3. The Court enter JUDGMENT in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

## OBJECTIONS

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is

REPORT AND RECOMMENDATION - 41

directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE MANAGEMENT DEADLINE ACCORDINGLY.**

DATED July 17, 2018.

s/Mary K. Dimke
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION - 42